# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

IN RE                                                                        Case No. 19-80480-BPC
                                                                                           Chapter 13

CORNESHA K. SILMON,

    Debtor.

## MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S MOTION TO REDISTRIBUTE FUNDS

Sabrina L. McKinney, the Chapter 13 Trustee ("Trustee"), filed a Motion to Modify Plan Post-Confirmation. (Doc. 46) ("Motion"). After a status hearing and filing briefs, Trustee now requests that the Motion be construed as one to redistribute proceeds refunded from a creditor for the benefit of unsecured creditors. Debtor opposes Trustee's Motion and argues that the refunded proceeds should be returned to Debtor instead. For the reasons below, the Motion is due to be GRANTED.

### I. JURISDICTION

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(b). These are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A). This is a final order.

### II. FACTS AND PROCEDURAL HISTORY

The Order confirming Debtor's Chapter 13 plan entered on June 27, 2019. (Doc. 17). The plan provided a $1,500.00 POT for the benefit of unsecured creditors. *Id.* Specifically, Paragraph 15 states: "Allowed non-priority unsecured claims shall be paid through pro rata participation of $1,500.00 for the benefit of unsecured creditors, or until all allowed claims are paid in full." (Doc. 6). Among other things, Paragraph 6 of the plan provided for payment to the Internal Revenue

1

Service ("IRS") for a priority claim in the amount of $2,000.00 at 6.50%. *Id*. That section provides: "The debtor will pay all priority claims including the following pursuant to 11 U.S.C. § 507 unless a claimant expressly agrees otherwise." *Id*.

After confirmation, the IRS filed a proof of claim in the amount of $6,326.54. (Claim 8). Debtor and Trustee stipulated that the plan provided for the IRS priority claim in the amount of $6,326.54 at 6.50%. (Doc. 56). Debtor's plan payments were increased from $185.00 bi-weekly to $228.00 bi-weekly to accommodate the larger claim. (Doc. 61). During the case, payments to the IRS totaled $7,771.09 which paid the IRS priority claim in full. (Doc. 56). Trustee stated the $1,500.00 POT paid 15.46% to unsecured creditors. (Doc. 61). On May 2, 2024, Trustee filed a Notice of Completion of Plan Payments (the "Notice"). (Doc. 56). On May 29, 2024, the IRS amended its claim to reduce it to zero, and Trustee withdrew her Notice the same day. *Id*. The next day, Trustee received three checks totaling $7,771.09 (the "Refund") from the IRS. *Id*.

On June 5, 2024, Trustee moved to modify the plan in order to apply the Refund and increase the POT from $1,500.00 to $9,271.09 for the benefit of unsecured creditors. (Doc. 46). Debtor objected and requested that the Court direct Trustee to pay the Refund to Debtor. (Doc. 48). After taking the matter under advisement and reviewing the record more closely, the Court set a status hearing to raise a statutory issue with modification. At the hearing, Trustee asserted that her intent was not to modify the plan, but to redistribute the Refund pursuant to the terms of the confirmed plan. Thereafter, the Court set a deadline for Trustee to file a brief clarifying her position and allowed Debtor seven days to file a response. (Doc. 59). Trustee's brief requests the Motion to Modify instead be construed as a Motion to Direct Payments and, relying on *In re Dubose*, 555 B.R. 41 (Bankr. M.D. Ala. 2016), she argues the Refund should be redistributed pro rata to all general unsecured creditors. (Doc. 61). In response, Debtor insists Trustee's

2

request is still a modification and points out that modification is untimely here since Debtor completed all of the plan payments. (Doc. 62). Debtor further argues that Trustee paid an invalid claim. *Id*.

### III. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

First, the Court agrees with Debtor that modification of the plan is not appropriate. The Bankruptcy Code states that "[a]t any time after confirmation of the plan *but before the completion of payments* under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim." 11 U.S.C. § 1329(a) (emphasis added). Reviewing the timing of payments, disbursements, and proposed modification, the Court finds that plan modification is not statutorily permissible here because the initial provision of § 1329 "plainly sets forth a temporal requirement prohibiting plan modifications after all plan payments have been made." *In re Stanke*, 638 B.R. 571, 574 (Bankr. N.D. Tex. 2022); *see also In re Meza*, 467 F.3d 874, 878 (5th Cir. 2006) ("Consistent with § 1329's plain language, it is largely undisputed that a plan cannot be modified once all payments have been made.") (citations omitted). That said, construing the Motion as one to direct payments delivers a different result.

Under 11 U.S.C. §§ 1326(a)(2) and (c), a trustee must make disbursements to creditors in accordance with the confirmed plan. Here, Debtor's plan was a "POT plan" meaning Debtor proposed to pay $1,500.00 to the unsecured creditors.[1] Specifically, paragraph 15 provided: "Allowed non-priority unsecured claims shall be paid through pro rata participation of $1,500.00 for the benefit of unsecured creditors, or until all allowed claims are paid in full." (Doc. 6). In this

---

[1] "A 'pot plan' is a defined contribution plan where the amount paid by the debtor is fixed, and the dividend paid to creditors can vary based upon the universe of claims filed and allowed." *In re Vastadore*, 516 B.R. 772, 775 (Bankr. W.D. Pa. 2014).

3

case, the terms of the plan enable Trustee to pay unsecured creditors more than the $1,500.00 (and up to full payment) depending on the circumstances of the case.

Trustee made disbursements in accordance with Debtor's confirmed plan, and, years after filing its claim and accepting payments on its priority claim, the IRS amended its claim and returned those payments back to Trustee. The parties do not dispute that the unsecured creditors have not been paid in full; instead, they have only been paid 15.46% of their claims. (Doc. 61). "If, as is the case here, a creditor returns the disbursement back to the trustee, this action does not release the trustee from his [or her] obligation to comply with the order of confirmation and disburse the plan payments until full satisfaction of all claims or until all the plan payments have been disbursed." *In re Hoffman*, No. 13-60831, 2019 WL 1271457, at *3 (Bankr. W.D. Va. Mar. 15, 2019); *In re Dubose*, 555 B.R. at 47 ("[W]hen distributed funds are returned to the Chapter 13 trustee after the debtor has obtained a discharge, the funds are to be redistributed pursuant to the plan until the unsecured claims provided for by the plan are fully paid, at which point any excess funds may be returned to the debtor.").[2] This is because "a debtor has no right to plan payments after confirmation of a plan, except where excess funds remain after all distributions authorized by the plan have been made in full." *In re Bacon*, 274 B.R. 682, 685 (Bankr. D. Md. 2002); *In re Begoun*, No. 13 B 27604, 2019 WL 3763935, at *4 (Bankr. N.D. Ill. Aug. 6, 2019) ("[W]hen the trustee pays a creditor under a confirmed chapter 13 plan and the creditor returns the payments,

---

[2] Debtor points out two factual distinctions with *In re Dubose*. First, Debtor argues this case is different because no party objected to Trustee's motion in that case. Yet the Court did analyze the issue before it and the findings and opinion did not result from any default judgment. Secondly, Debtor distinguishes *In re Dubose* because a discharge has not yet entered here like it had in *In re Dubose*. Debtor did not provide further argument for a discharge being required prior to distributing the Refund under this plan; however, other courts have addressed redistributing refunds before discharge and held the returned funds should be redistributed under the plan. *See In re Smith*, 334 B.R. 26, 39 (Bankr. D. Mass. 2005) ("The refund existed and was transmitted to the Trustee before the Debtors' [sic] received a discharge."); *see also In re Vastadore*, 516 B.R. 772 (Bankr. W.D. Pa. 2014).

4

those payments remain available to be distributed according to the plan."). If, as is the case here, the "unsecured creditors have not been paid in full, the trustee not only can but *must* use the returned payments to pay them until they are paid in full; only then is anything available to the debtor." *In re Begoun*, 2019 WL 3763935, at *4 (emphasis added). Here, because it is undisputed that the unsecured creditors were not paid in full, Debtor's unsecured creditors are entitled to the pro rata distribution from the $7,771.09 returned to Trustee.

Unlike *In re Wilkinson* cited by Debtor, the Refund was money already committed as plan payments and not a post-petition inheritance. No. 08-31769, 2013 WL 4507925 (Bankr. M.D. Ala. Aug. 23, 2013). The Refund is not "unanticipated income" as Debtor now claims, it is returned plan payments. (Doc. 62). Because the Refund was money Debtor committed to pay under her plan, Debtor "remains bound by the terms of her confirmed plan to pay . . . the total amounts required by the plan." *In re Hoffman*, 2019 WL 1271457, at *6. The Joint Stipulation set forth that the "plan provided for the IRS priority claim in the amount of $6,326.54 at 6.50%." (Doc. 56). Debtor contends that Trustee's proposed redistribution is essentially a modification by another name, but the Court disagrees. Contrary to Debtor's argument, *not* allowing the plan payments to be redistributed here would effectively modify Debtor's plan. Specifically, if Trustee released the Refund to Debtor, the result "modifies her confirmed plan obligation" by reducing the amount she committed to pay under the confirmed plan which provides unsecured creditors may be paid up to the amounts of their allowed claims. *In re Hoffman*, 2019 WL 1271457, at *4; *see also In re Smith*, 334 B.R. 26, 40 (Bankr. D. Mass. 2005) ("Debtors through their Motion to Reconsider essentially are asking the Court to reduce the amount payable under their confirmed plan from $42,019 by $6,260.61."). As aforementioned, a modification at this point is statutorily impermissible because Debtor completed plan payments.

5

Finally, the Court turns to Debtor's arguments that Trustee paid an invalid claim, and the Court should independently review the status of claims at confirmation. As an initial matter, the record is clear that neither Debtor nor Trustee objected to the IRS claim or its priority status when the claim was filed. In support of her argument that Trustee paid an invalid claim, Debtor cites the unreported case of *In re Taranovich*, No. 93-42152, 1994 WL 329429 (Bankr. S.D. Ga. June 30, 1994). In that case, even though the trustee raised an issue with feasibility based on the status of two IRS claims, the court broadly stated: "The Court has a duty to review the asserted priority of a claim even absent an objection." *Id*., at *3. First, there are key factual distinctions between this case and *In re Taranovich*. In *In re Taranovich*, despite the court's statement about a duty to review status of claims absent objection, the court determined the priority status at confirmation based on the trustee's question of feasibility; it was not an issue raised *sua sponte* by the court. Here, Debtor proposed to pay a priority unsecured debt to the IRS, and no feasibility issues were raised at confirmation. While declining to find it is this Court's duty to independently review the status of all claims at confirmation, even reviewing the claims in this case would not have avoided the matter at hand. Crucially, at the time of confirmation here, the IRS claim had not yet been filed. While recognizing the distinction between the presumed validity of a properly filed claim under § 502 and the establishment of priority status under § 507, this Court nonetheless disagrees with the extent of the conclusion from *In re Taranovich* broadly applying in every case. Proofs of claims are prima facie evidence of their validity and amount; specifically, § 502 provides: "A claim . . . is deemed allowed, *unless* a party in interest . . . objects," and "*if such objection a claim is made*, the court . . . shall determine the amount of such claim." § 502(a)-(b) (emphasis added). The Court does not view this language as an invitation to review and adjust the status of claims absent objection unless special

6

circumstances exist. Instead, this Court agrees with those courts that find "the presumption of validity includes a presumption of priority when the claim is marked priority." *In re DeAngelis Tangibles, Inc.*, 238 B.R. 96, 98 (Bankr. M.D. Pa. 1999) (citing *In re Transouth Truck Equip., Inc.*, 87 B.R. 937, 940 (Bankr. E.D. Tenn. 1988). With that, this Court disagrees that it had an independent duty to review the status of the post-confirmation IRS priority claim here and disagrees with Debtor's contention that Trustee paid an invalid claim.[3]

## IV. CONCLUSION

For the reasons set forth above, Trustee's Motion is GRANTED, and Trustee shall redistribute the $7,771.09 to unsecured creditors under the terms of the confirmed plan.

Done this 1st day of October, 2024.

Bess M. Parrish Creswell
United States Bankruptcy Judge

c: Debtor
Charles G. Reynolds, Attorney for Debtor
Sabrina L. McKinney, Trustee

---

[3] Additionally, the Court notes that, while objecting to claims is not a duty of the Court, it is one of Debtor's attorney. *See* Administrative Order 2018-19 ("In filing the Rule 2016(b) Disclosure, the debtor's attorney shall reflect that the attorney will perform all required and necessary services for the debtor including, but not limited to: . . . [r]eviewing and filing claims and objecting to claims as necessary . . . [f]iling amendments, motions, or any other required pleadings; [v]igorously pursuing all objections to claims filed on behalf of the debtor to a final order or judgment.")